Mr. Justice Hall
delivered the opinion of the Court.
The parties appear here in reverse order of their appearance in the trial court. We refer to the defendants in error as plaintiffs, or by their given names, and to the plaintiff in error as Allstate.
In 1958 Allstate issued to Floyd its “Allstate Crusader Policy,” affording to Floyd auto insurance protection. This policy had been renewed several times and was continuously in force from the date of its issue up to and including the date of the alleged accident and subsequent events which gave rise to this litigation.
Among other things the policy provided:
“PART 1.
“Coverage Cl • — ■ Automobile Medical Payments Insurance.
“Allstate will pay all reasonable expenses, incurred within one year from the date of accident, for necessary medical, * * * hospital, * * * pharmaceuticals, * * * to or for an insured who sustains bodily injury caused by accident.
“1. * * * while occupying * * * an automobile * * * .” On June 18, 1961, Opal was a passenger in Floyd’s car then being driven by Floyd. On that date Floyd’s car collided with a car driven by a Mrs. Sutton. The collision was caused by Mrs. Sutton cutting in front of Floyd’s car in changing lanes. The cars were moving slowly and the collision was a mild one resulting in only minor damage to the cars.
Following the collision the plaintiffs drove a short distance to their home and from there Opal was removed by ambulance to the Penrose Hospital where she remained under medical care until July 11, 1961, at which time she was discharged and returned home. Charges made for medical attention, hospital care and pharma *251 eeuticals during this period amounted to $1,038.75. These charges were paid by Floyd.
Floyd made demand on Allstate for reimbursement and on its failure to pay plaintiffs commenced this action, setting forth the policy, the accident and the expenses incurred and paid.
Allstate answered, alleging (1) that the expenses incurred were for injuries suffered prior to June 18, 1961, and were not the result of the automobile collision; (2) that such expenses were incurred because of injuries willfully inflicted on Opal by Floyd prior to June 18, 1961, and were in no way connected with an automobile accident.
On March 5, 1962, a PRE-TRIAL ORDER was entered and approved in writing by the parties, which among other things provided:
“2. Facts at issue are: the occurrence of an accident involving the automobile and plaintiff, Opal Miller, injuries to Opal Miller requiring medical expenditures, and the expenditures.”
Trial was to a jury which returned its verdict in favor of plaintiffs in the amount of $1,038.75. Allstate filed motions for a new trial and for judgment notwithstanding the verdict. These motions were denied and judgment entered on the verdict.
Allstate is here by writ of error seeking reversal and dismissal of plaintiff’s complaint, and urges as reasons therefor:
1. That error was committed by the trial court in refusing to admit in evidence certain documents tendered by Allstate.
2. In failing to direct the jury to return a verdict for the defendant because of the alleged failure of plaintiffs to prove that Opal suffered any injuries in an automobile or that any expenses were incurred on account of such injuries.
We find no substantial dispute in the evidence. From the record it appears that Opal, prior to June 1961, had *252 experienced trouble with her back and had submitted to an operation on her lower lumbar spine.
She was admitted to Penrose Hospital on June 9, 1961, and placed in the care of Dr. Taylor. At that time she was suffering from severe pain in her back and also from numerous bruises on her body. Cause of the pain in her back or what induced it is not clear, but it is clear that the bruises from which she was suffering had been inflicted upon her by her husband.
Her response to rest and treatment for her back was slow; however, at about noon on Saturday, June 17, 1961, she had improved to the point where she could walk erect, squat, bend forward, backward, and to each side without difficulty or pain. Her doctor at that time discharged her from the hospital, directing her to use normal precautions against stress on the lower part of her back.
Floyd testified that on her arrival at home Saturday afternoon, June 17, 1961, she prepared their lunch; the following morning they stayed home and she again prepared lunch, after which they got into Floyd’s car, went to the Post Office, picked up the mail, and were returning home when at a point about two blocks from home his car collided with the car of Mrs. Sutton; that the collision caused Opal, who was reading the mail, to fall to the floor of the car.
A disinterested witness testified that he- was at the scene of the accident, and that Opal was in pain, “ * * * looked like — she said she had hit her head against the windshield or dash. * * *
“ * * * She looked like she was in a fainting condition. I mean she looked real pale — she was holding her head.”
Floyd further testified that they were at the scene of the accident for about thirty minutes and then he drove home. On arriving home Opal was fainting and he carried her into the house and started giving her oxygen and she was then “definitely out,” so he called *253 an ambulance and sent her back to Penrose Hospital where she was again placed in the care of Dr. Taylor.
Dr. Taylor testified that on her second visit to the hospital her complaint was of pain in her back, very similar to that complained of on her first visit.
“A. * * * she was having a great deal of pain up and down her entire spine, more especially in the lower half of the spine, and a good deal of the pain I felt was due to muscle spasm.
“Q. Now, Doctor, I have for you this question. Was the condition which you found demonstrated on Sunday night the 18th of June in your professional opinion a logical and routine extension of the condition that you saw on Saturday the previous day? A. No, sir. Q. In your opinion then there was or was not an intervening transaction? A. Something happened between the two dates that I saw her. Q. You have no personal knowledge of what took place? A. No.”
“Q. And the only way she could have a recurrence of a low back sprain would be a recurrence of something that had gone before, wouldn’t it? A. Well, if you had trauma — if there is a trauma in the interim, then this may aggravate a weak back — this is possible. Q. That is possible. And your opinion is that there must have been some trauma in the interim? A. I think so. Q. All right. Now, you will not say as to what kind of trauma? A. Physical trauma, but the degree I couldn’t say.”
The foregoing testimony precluded the court from directing a verdict in favor of defendant and warranted the trial court in submitting to the jury the question of whether Opal had sustained bodily injuries in an automobile accident on June 18, 1961.
This question was presented to the jury under proper instructions and resolved in plaintiffs’ favor.
We deem it unnecessary to refer to numerous deci *254 sions of this court that under such circumstances the jury’s verdict will not be disturbed.
Turning now to the. assigned error of the trial court in refusing to admit in evidence Allstate’s tendered Exhibits 7, 7A, 7B, 7C, 7D, 7E, 7F, we find no merit in the contentions of Allstate.
Exhibit 7 is a copy of a divorce complaint filed in the County Court of El Paso County, Civil Action No. 19011, June 12, 1961, wherein Opal is the- plaintiff and Floyd the defendant.
Exhibit 7A is a copy of a motion for temporary restraining order filed by Opal in the above case.
Exhibit 7B is a copy of order issued Ex Parte June 12, 1961, pursuant to the above motion directing issuance by the clerk of citation directing Floyd to not molest Opal.
Exhibit 7C is a copy of citation issued June 12, 1961, pursuant to said order.
Exhibit 7D is a copy of Summons issued in the above mentioned divorce case.
Exhibit 7E is a copy of motion of Opal requesting the termination of the restraining citation and order granting the motion, both dated August 25, 1961.
Exhibit 7F is a copy of decree of divorce wherein Opal was granted a divorce from Floyd, dated December 5, 1961.
Allstate contends that these documents should have been admitted for the purpose of impeaching the testimony of Opal and Floyd, and also as evidence that Floyd did, and would unless restrained by court order, beat his wife.
Counsel refer to several decisions of this court wherein it was held to be error to refuse to a party permission to impeach a witness on a material matter. We recognize this well established rule of law, but it is equally well established that one may not be impeached on immaterial matters. Torris v. The People, 19 Colo. 438, 36 Pac. 153; Mitsunaga v. The People, 54 Colo. 102, *255 129 Pac. 241; Gizewski v. People, 78 Colo. 123, 239 Pac. 1026.
In Denver Tramway Co. v. Owens, 20 Colo. 107, 36 Pac. 848, this court said:
“The supposed violent words did not occur on the occasion of the accident, nor were they connected with that transaction, nor had they been given in chief on this trial; they were not, therefore, a part of the res gestae. But were they admissible as impeaching testimony, or for any other purpose? After proper foundation laid, a witness may be impeached by showing that he has made some statement material to the issue different from the testimony he has given; but he cannot be impeached by showing that he has made a contradictory statement concerning some collateral or immaterial matters; and such was the nature of the testimony offered. 1 Greenleaf’s Ev. sec. 449.”
The exhibits offered and rejected have nothing whatsoever to do with the issues presented for determination. By pre-trial order, an order approved by all parties, the issues to be tried were:
“2. Facts at issue are: the occurrence of an accident involving the automobile and plaintiff, Opal Miller, injuries to Opal Miller requiring medical expenditures, and the expenditures.”
The divorce complaint, summons, restraining order, order vacating the same, and divorce decree were matters entirely foreign to the issues being tried.
They were irrelevant, and nothing therein contained could shed any light on any of the questions to be resolved. Their offer in evidence could serve only a diversionary purpose, to have the jury ignore the issues and forget their very important role of seeking the truth.
Being highly improper, irrelevant, and wholly lacking in probative value as to any issue presented for determination, they were properly excluded.
*256 Finding no error in the record, the judgment is affirmed.
Mr. Justice Sutton and Mr. Justice Day not participating.